UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-60734-CIV-ALTMAN/Hunt

**ERIC MITTENTHAL,** *et al.*,

    *Plaintiffs*,

v.

**FLORIDA PANTHERS HOCKEY CLUB, LTD.**, *et al.,*

    *Defendants*.

_____/

## ORDER REMANDING CASE

The Plaintiffs initially brought this TCPA action in federal court. When a decision from the Eleventh Circuit suggested that they lacked standing to pursue their claim, the Plaintiffs—hoping to avoid the preclusive effect of a dismissal—voluntarily dismissed their case and refiled it in state court. The Defendants, presumably unhappy with the state forum, then removed the case—citing this Court's original jurisdiction over federal statutory actions. The Plaintiffs have now moved to remand, arguing that *they* have no standing. This Order follows.

## THE FACTS

Eric Mittenthal, Anita Jairam, and Kevin Hillow (collectively, the "Plaintiffs") are fans of the Florida Panthers Hockey Club who received text messages that (they allege) violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). *See* State Court Complaint (the "Complaint") [ECF No. 1-2 at 10–31] ¶ 24. Seeking redress, the Plaintiffs sued the Florida Panthers Hockey Club, along with two of its executives (Jake Schreiber and David Brunson) and an affiliated corporate entity (PHGP, LLC) (collectively, the "Defendants" or the "Florida Panthers"). *See id.* at 1.

Mittenthal was first contacted by the Defendants in 2019, when he "learned that he could text the word 'STUDENT' to [the Florida Panthers at 64600] to receive a coupon to attend a

Panthers hockey game at a discount." *Id.* ¶ 27. Immediately after Mittenhal sent that text message, and while his identity and telephone number remained unknown to the Florida Panthers, the Defendants used an autodialing system to send Mittenthal two text messages. *See id.* ¶¶ 29–30. Those messages were sent without the need for "anyone to type them out," to click "SEND" or "any other button," and "without any human involvement whatsoever." *Id.* ¶ 31.

The messages asked Mittenthal to "REPLY with your .edu email address" to collect the discounted tickets. *Id.* ¶ 33. He refused. *See id.* ¶ 33–34. Nevertheless, because the Florida Panthers stored Mittenthal's phone number, he "began to regularly receive marketing text messages on his cell phone, each of which advertised the commercial availability of Defendants' sports programming and/or sought to encourage Plaintiff to purchase Defendants' good[s] or services." *Id.* ¶ 35. Over the next two months, Mittenthal received around 10 such promotional messages. *See id.* at 6–9. Mittenthal never agreed to receive the Defendants' text messages through this autodialing system. *See id.* ¶ 46.

Jairam and Hillow had similar experiences. The Plaintiffs attach to their Complaint selected screenshots of the "close to thirty text messages" Jairam and Hillow received. *See id.* at 9–12, ¶ 50. The Plaintiffs do not say when those messages were sent. But, based on the time stamps on the screenshots, they apparently were sent over a period of four months. *See id.* at 9–12. Neither Jairam nor Hillow ever consented to be contacted through the Defendants' autodialing system. *See id.* ¶ 51.

The Complaint does not explain *how* receiving these messages harmed the Plaintiffs. The Plaintiffs say only that they "*have* been impacted and harmed," and that they *have* suffered a "legal injury." Compl. ¶¶ 74, 17 (emphasis added).

The Plaintiffs initially sued the Florida Panthers *in federal court* for these alleged violations

2

of the TCPA (the "federal court action"). *See In re Florida Panthers TCPA Litigation*, No. 20-CV-60112-ALTMAN, ECF No. 1 (Jan. 17, 2020). A few months later, however—and for reasons that were, at that time, unclear—the Plaintiffs voluntarily dismissed the federal court action. *See id.* at [ECF No. 13]. The Plaintiffs then refiled their case in state court. *See* Compl. at 10. A few days later, the Defendants removed the action under this Court's federal-question jurisdiction. *See* Notice of Removal [ECF No. 1] at 1.[1]

In their Motion to Remand, the Plaintiffs say that they dismissed the federal court action because the Eleventh Circuit's decision in *Salcedo v. Hanna*, 96 F.3d 1162 (11th Cir. 2019), clarified that they lacked standing to pursue their claims in federal court. *See* Motion to Remand (the "Motion") [ECF No. 9] at 1–2 ("That dismissal and the re-filing of their case in state court was prompted by the developing uncertainty within this Circuit as to whether recipients of text messages have Article III standing to maintain a TCPA claim in federal court." (citing *Eldridge v. Pet Supermarket, Inc.*, 2020 WL 1475094, at *1 (S.D. Fla. Mar. 9, 2020))). In opposing remand, the Defendants claim that they "are not required to allege Article III standing in their Notice of Removal," Opposition to Motion to Remand (the "Response") [ECF No. 17] at 1—and, even if they were, that "Article III standing is apparent on the face of the prior consolidated amended complaint," *id.* at 9.

## THE LAW

A federal court should remand to state court any case that has been improperly removed. *See* 28 U.S.C. § 1447(c). The party attempting to invoke the federal court's jurisdiction bears the burden of establishing that jurisdiction. *See McNutt v. Gen. Motors Acceptance Corp. of Ind., Inc.*,

---

[1] The Defendants removed the case *solely* under 28 U.S.C. § 1331. Nowhere in their Notice of Removal, in other words, did the Defendants mention any other jurisdiction-conferring statute.

298 U.S. 178, 189 (1936). "Not only does the language of the Act of 1887 evidence the Congressional purpose to restrict the jurisdiction of the federal courts on removal, but the policy of the successive acts of Congress regulating the jurisdiction of federal courts is one calling for the strict construction of such legislation." *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941). Indeed, "[d]ue regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Healy v. Ratta*, 292 U.S. 263, 270 (1934). "Defendant's right to remove and plaintiff's right to choose his forum are not on equal footing; for example, unlike the rules applied when plaintiff has filed suit in federal court with a claim that, on its face, satisfies the jurisdictional amount, removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

"The requirement that jurisdiction be established as a threshold matter . . . is 'inflexible and without exception.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)). Even when a party fails to raise the issue of subject-matter jurisdiction, its "delineations must be policed by the courts on their own initiative." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) (citations omitted); *accord Fitzgerald v. Seaboard Sys. R.R., Inc.*, 760 F.2d 1249, 1251 (11th Cir. 1985) ("A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises." (citation omitted)).

The "district courts . . . have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Because the TCPA is a federal statute, this case "aris[es]" under the laws of the United States. That, however, is not the

4

end of the matter. The Plaintiffs must also have standing to bring their claim. *See Lujan v. Def.'s of Wildlife*, 504 U.S. 555, 560 (1992). Under Article III of the Constitution, the subject-matter jurisdiction of the federal courts is limited to "Cases" and "Controversies." U.S. Const. art. III, § 2. And "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan*, 504 U.S. at 560. Thus, standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005).

To establish their standing, the Plaintiffs "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *see also Lujan*, 504 U.S. at 560 (describing these three elements as the standing inquiry's "irreducible constitutional minimum").

Proving an "injury in fact" is, as the Supreme Court has said, "[f]irst and foremost" among these three elements. *Steel Co.*, 523 U.S. at 103. "It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Raines v. Byrd*, 521 U.S. 811, 820 (1997). Indeed, in "no event" may "Congress abrogate the Art. III minima." *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979).

To establish an injury in fact, a plaintiff must show, not only "an invasion of a legally protected interest," but also a "concrete and particularized" injury that is "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. "A 'concrete' injury must be '*de facto*'; that

5

is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548. The injury, in short, must be "real" and not "abstract." *Id.* Indeed, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.*

## ANALYSIS

To adjudicate the Motion to Remand, the Court must answer two questions: Do the Plaintiffs have Article III standing? And, if not, should this case be dismissed or remanded? Before reaching either question, however, the Court must address two threshold issues. The first is whether the Court may consider the original (now-dismissed) Complaint the Plaintiffs filed in the federal court action. The second is whether a defendant must plead his standing *in the Notice of Removal*.

### I.     The Admissibility of the Plaintiffs' Prior Pleadings

In their Response, the Defendants rely *exclusively* on jurisdictional averments the Plaintiffs made in the (now-dismissed) federal-court complaint. *See* Resp. at 9 ("Article III standing is apparent on the face of the prior consolidated amended complaint filed before this Court."); *id.* at 5 ("Plaintiff eliminated all of these [standing] allegations from the complaint filed in this case in state court, since removed to this Court."). Quoting from *Doss v. Apache Powder Co.*, 430 F.2d 1317, 1323 (5th Cir. 1970)—an Old Fifth Circuit case applying Texas law—and two out-of-circuit decisions, the Defendants contend that the abandoned pleadings are admissible as admissions against interest. *See* Resp. at 5. The Plaintiffs, for their part, cite two Northern District of California cases for the opposite proposition. *See* Mot. at 4–5 (citations omitted). Needless to say, the parties' briefs leave much to chance. Texas law, after all, does not control us here. And this Court is not bound by decisions from the Northern District of California.

Fortunately, the Eleventh Circuit *has* addressed the question—if not altogether directly. As "a general matter," that court has said, "an amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is **no longer a part of the pleader's averments** against his adversary." *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (cleaned up) (emphasis added). In fact, if a complaint is amended,[2] the amendment "supersede[s] the previous complaints and **render[s] null their contradictory allegations.**" *Seiger by & through Seiger v. Philipp*, 735 F. App'x 635, 637–38 (11th Cir. 2018) (emphasis added); *see also Riley v. Fairbanks Capital Corp.*, 222 F. App.'x 897, 898 (11th Cir. 2007) (amended complaint supersedes the former pleading); *Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006) (same); *Fritz v. Standard Sec. Life Ins. Co.*, 676 F.2d 1356, 1358 (11th Cir. 1982) ("Under the Federal Rules, an amended complaint supersedes the original complaint.").

This rule flows naturally from the proposition that subject-matter jurisdiction "depends on the state of things at the time of the action brought." *Mullan v. Torrance*, 9 Wheat. 537, 539 (1824). When "the state of things" changes—because, for example, the plaintiff has amended or refiled his complaint—a federal court's jurisdiction arises, if at all, from the allegations of the "operative" pleading. "Thus, when a plaintiff files a complaint in federal court and then voluntarily amends

---

2 Here, of course, the Plaintiffs *refiled* their Complaint without *amending* it—a distinction without a difference. In both scenarios, the original complaint has been superseded by either an amended or a refiled pleading. In each case, then, only the amended or refiled pleading is, as it were, "operative." Either way, the Defendants never suggest that this distinction between an amended and a refiled complaint somehow makes any difference at all. They have thus waived any such argument. *See, e.g.*, *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed waived."); *Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009) ("A party cannot readily complain about the entry of a summary judgment order that did not consider an argument they chose not to develop for the district court at the time of the summary judgment motions.").

7

the complaint courts look to the amended complaint to determine jurisdiction." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007) (cleaned up).

The Eleventh Circuit's decision in *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1219–20 (11th Cir. 2007), is instructive. In that case, the defendant removed a class action the plaintiffs had filed in state court under the Class Action Fairness Act, 28 U.S.C. §§ 1711–15, *et seq.* ("CAFA"). *Id*. at 1219. Hoping to invoke the federal court's diversity jurisdiction, the defendant relied on the original—and since-abandoned—iteration of the plaintiffs' complaint. *Id*. Specifically, whereas the original complaint had sought $1,250,000 in damages for each plaintiff, the operative (amended) complaint included no damages computation at all. *Id.* In the defendant's view, the plaintiffs' decision to delete (but not replace) their original jurisdictional allegations opened the door for the defendants to use those abandoned allegations to establish the amount in controversy. *See id.* The Eleventh Circuit disagreed. As the court explained:

> [I]t would be improper to bind plaintiffs by the prayer for relief in the initial pleading. Plaintiffs have since amended the prayer for relief, and this amended prayer for relief supersedes the one contained in the initial complaint. Under both Alabama and federal law, an amended complaint supersedes the initial complaint and becomes the operative pleading in the case. Moreover, the jurisdictional allegations in both complaints were subject to the requirements of Alabama Rule of Civil Procedure 11. We accordingly presume that the plaintiffs' original demand of $1,250,000 reflected counsels' good faith assessment of the full value of their claims at the time. We likewise must presume, however, that the plaintiffs' amended, unspecified demand clause also reflects counsels' revised good-faith determination regarding damages. The third amended complaint represents counsels' belief that counsel could, in good faith, state only that the plaintiffs' claims put in controversy an amount greater than the Alabama Circuit Courts' jurisdictional minimum of $3,000. In short, we do not bind parties to a figure counsel cannot advance in good faith. The plaintiffs amended their complaint to remove the specific damages demand, and that amended pleading is the document we look to in determining whether jurisdiction exists.

*Id*. at 1219–20 (cleaned up).

This rule makes sense. Binding plaintiffs to factual averments they have abandoned would create perverse incentives for plaintiffs' lawyers in civil cases. The strictures of Rule 11 require lawyers to certify "that to the best of [their] knowledge, information, and belief . . . the factual contentions [in their papers] have evidentiary support." FED. R. CIV. P. 11(b). And this obligation continues throughout the pendency of the litigation. Indeed, "if evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the ***party has a duty under the rule not to persist with that contention***." *Id.* at advisory committee's note (emphasis added).

As the litigation progresses—and as new information becomes available through discovery—attorneys should be *encouraged* to withdraw or modify averments that no longer reflect the true state of affairs. Otherwise, counsel would face a veritable Catch-22. On the one hand, they could abandon their (now-untrue) allegations and face the evidentiary backlash at trial—where their opponents would inevitably deploy those forsaken averments against them. On the other hand, they could plow ahead with assertions they now know to be untrue and hope to avoid sanctions along the way. This Court will not force lawyers to choose between Scylla and Charybdis. Factual averments a party has abandoned—whether through emendation or refiling—should not be accepted as evidence.

**II.     The Notice of Removal and its Pleading Requirements**

In the Plaintiffs' view, as "the removing party, Defendants have the burden of proving all federal subject-matter jurisdictional prerequisites are met, including the requirements of Article III standing." Mot. at 2. In support, they cite two cases—neither of which involved removal. *See id.* The Defendants, for their part, point the Court to *Gonzalez v. TCR Sports Broad. Holding, LLP*, 2018 WL 4292018, at *2 (S.D. Fla. Sept. 10, 2018). In that case, Judge Gayles—following an exhaustive review of the Supreme Court's decision in *Dart Cherokee Basin Operating Co., LLC*

*v. Owens*, 574 U.S. 81 (2014)—concluded that a removing defendant need only plead the source of the district court's *original* jurisdiction in the removal notice. *Gonzalez*, 2018 WL 4292018, at *2. But, Judge Gayles found, the defendant need not include in that notice any allegations concerning the plaintiff's *standing*. *See id.* The Ninth Circuit has likewise held that, under the removal statutes, a defendant need not include in the removal notice any averments regarding the plaintiff's standing. *See Lee v. Am. Nat. Ins. Co.*, 260 F.3d 997, 1008 (9th Cir. 2001). The Eleventh Circuit appears never to have addressed the issue.

The Ninth Circuit's view—which the Defendants have adopted—appears to be correct. Under 28 U.S.C. § 1441, any case that falls within the Court's "original jurisdiction" is removable. And, under 28 U.S.C. § 1331, the "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Because an action under the TCPA indisputably arises under the laws of the United States, this case is thus removable. The removal statute never requires a removing defendant to establish—or even allege—the plaintiff's standing in the removal notice. And the Court is not free to add words to a statute that do not appear there. *See* A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 182 (2012) ("The familiar 'easy-to-say-so-if-that-is-what-was-meant' rule of statutory interpretation has full force here.").

This finding, though, does not save the Defendants here. Irrespective of the pleading requirements, both *Lee* and *Gonzalez* ultimately concluded that, if a plaintiff is found to lack standing ***at any point*** in the case, the action must be remanded. *See Gonzalez*, 2018 WL 4292018, at *2 ("The Court notes that it may turn out that Plaintiff does not have standing to bring its TCPA claims in this Court. At that time, remand may be an appropriate remedy."); *Lee*, 260 F.3d at 1008 ("The standing defect renders Lee's claim against ANTEX non-justiciable in federal court . . . .").

This conclusion follows logically from the plain meaning of the words in the removal statute. *See* SCALIA & GARNER at 69 ("The ordinary-meaning rule is the most fundamental semantic rule of interpretation."). The statute, after all, is pellucid that, if "at any time before final judgment it appears that the district court lacks *subject matter jurisdiction*, the case shall be remanded." 28 U.S.C. § 1447(c) (emphasis added). And, while standing may not be a component of this Court's *original jurisdiction*—and thus need not be pled in the removal notice—it most certainly is an element of the Court's *subject-matter jurisdiction*. As Judge Kozinski explained in *Lee*:

> Where the district court has "original jurisdiction" . . . the case is removable and our inquiry ends. Only at the next step, when we ask whether the case should be remanded, need we address questions of standing and other aspects of "subject matter jurisdiction." *Compare* 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have *original jurisdiction,* may be removed ...." (emphasis added)), *with id.* § 1447(c) ("If at any time before final judgment it appears that the district court lacks *subject matter jurisdiction,* the case shall be remanded." (emphasis added)).

*Lee*, 260 F.3d at 1008 (Kozinski, J., concurring).

Because the Plaintiffs have challenged their own standing, the Court must—as always—address that issue now. *See Bochese*, 405 F.3d at 974 ("In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims."). Thus, while the Defendants were not required to establish the Plaintiffs' standing in their Notice of Removal, it is indisputably their burden to prove it now. *See Lujan*, 504 U.S. at 561 ("The party invoking federal jurisdiction bears the burden of establishing these elements [of standing.]").

### III. Standing

Having disposed of the preliminary procedural issues, the Court must now decide whether the Plaintiffs have standing to pursue their claim. As discussed, in conducting this inquiry, the

Court may not consider assertions the Plaintiffs may have made in pleadings they have now abandoned. *See Lowery*, 483 F.3d at 1219–20. And, other than the now-abandoned original complaint, the Defendants have introduced *no evidence* of the Plaintiffs' standing. Again, as the party invoking this Court's jurisdiction, it was *their* burden to establish that standing. *See Dart Cherokee*, 574 U.S. at 85.

In any event, the Plaintiffs are right that *Salcedo* controls the decision here. In *Salcedo*, the plaintiff sued the defendant under the TCPA, alleging that he had received a "multimedia text message from Hanna [a Florida attorney] offering a ten percent discount on his services." *Salcedo*, 936 F.3d at 1165. After reviewing the TCPA's legislative history, analogous common-law torts, Eleventh Circuit precedent, and the constitutional principles underlying the doctrine of standing, the *Salcedo* Court concluded that a TCPA plaintiff's receipt of an unsolicited text message—without any concomitant allegation of harm—is insufficient to confer Article III standing. *See id.* at 1166–73. In saying so, the court was careful to base its decision on Salcedo's failure to allege that his review of the text message took an inordinate amount of time. Instead, the complaint "allege[d] time wasted only generally." *Id.* at 1168.

The court added that the text message Salcedo received did not cause any other harm either. It did not, for example, prevent the plaintiff from using his phone. *See id.* The plaintiff's phone could, after all, "continue to use all of the device's functions, including receiving other messages, while it is receiving a text message." *Id.* And, the court added, an unconsented text message differs in kind from an unwanted phone call or junk fax—both of which would confer Article III standing. As the court explained:

> Salcedo has not alleged anything like enjoying dinner at home with his family and having the domestic peace shattered by the ringing of the telephone. Nor has he alleged that his cell phone was searched, dispossessed, or seized for any length of

>time. Salcedo's allegations of a brief, inconsequential annoyance are categorically distinct from those kinds of real but intangible harms. The chirp, buzz, or blink of a cell phone receiving a single text message is more akin to walking down a busy sidewalk and having a flyer briefly waived in one's face. Annoying, perhaps, but not a basis for invoking the jurisdiction of the federal courts. All told, we conclude that Salcedo's allegations do not state a concrete harm that meets the injury-in-fact requirement of Article III.

*Id.* at 1172.

The *Salcedo* Court was careful to distinguish its unwanted text from the junk-fax scenario presented in *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245 (11th Cir. 2015). In that case, the Eleventh Circuit held that the receiver of a "junk fax" *does* have standing under the TCPA because "during the minute or so that it took to receive and process the fax message, his fax machine was unavailable for receiving legitimate business messages," and because printing an unsolicited fax carries *tangible* costs (i.e. ink and paper). *Salcedo*, 936 F.3d at 1167–68. Because a text message imposes no such *tangible* harm—and given that Salcedo's complaint identified no *intangible* cost (e.g. reviewing the message for a not-insubstantial amount of time)—Salcedo's text message differed materially from the "junk fax" at issue in *Palm Beach Golf. See id.* at 1167–69.

Notably, *Salcedo* did not turn on the fact that the plaintiff received only one text message. Nor could it have. "Article III standing is not a 'You must be this tall to ride' measuring stick." *Id.* at 1172. Put simply, "[t]here is no minimum quantitative limit required to show injury; rather, the focus is on the qualitative nature of the injury, regardless of how small the injury may be." *Saladin v. City of Milledgeville*, 812 F.2d 687, 691 (11th Cir. 1987). *Salcedo*, in short, stands for the proposition that, unless a complaint alleges some tangible or intangible harm, a TCPA plaintiff's receipt of unwanted text messages is, standing alone, insufficient to confer Article III standing.

With this principle in mind, the Court turns to the factual allegations of the operative complaint. In it, the Plaintiffs do say that they "have standing to maintain this action because they have suffered a legal injury as a result of Defendants' violations of the TCPA." Compl. ¶ 17; *see also id*. ¶ 74 ("Plaintiffs and all Class Members have been impacted and harmed by the acts of Defendants."). But, as *Spokeo* teaches, the "invasion of a legally protected interest" is not enough to establish injury in fact; the injury must also be "concrete and particularized." *Spokeo*, 136 S. Ct. at 1548; *see also Salcedo*, 936 F.3d at 1167 ("[A]n act of Congress that creates a statutory right and a private right of action to sue does not automatically create standing").

Here, the Complaint never references any *tangible* harm the Plaintiffs may have suffered. Nowhere, for example, does the Complaint allege that the Plaintiffs' phone carriers *charged* them for the text messages, or that they had to *pay* extra to store those messages. And, it goes without saying, the Complaint's allegations that the Plaintiffs "have standing," that they "suffered a legal injury," and that they "were harmed by the acts of Defendants" are a far cry from the "concrete and particularized" averments the Supreme Court required in *Spokeo*. Those allegations are, in either case, conclusory—and are thus not entitled to the presumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) ("As such, the allegations are conclusory and not entitled to be assumed true.").

The Plaintiffs likewise allege no *intangible* harm. Here, the focus of the inquiry is on *wasted time*.[3] *See* Resp. at 5. In *Salcedo*, the Eleventh Circuit observed that the complaint's silence

---

[3] The Defendants draw the Court's attention to a separate—and quite novel—intangible harm they say the Plaintiffs suffered: battery depletion. *See* Resp. at 12. For this position, they cite two out-of-district decisions—one of which preceded *Salcedo*. *See id.* While the Defendants' battery-depletion argument is, at first blush, alluring, there are two problems with it. *First*, the Plaintiffs make no mention of depleted battery power in their Complaint. *Cf. FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) ("It is a long-settled principle that standing cannot be 'inferred

on this question of "wasted time" doomed the plaintiff's standing arguments. *See Salcedo*, 936 F.3d at 1168 ("In the absence of a specific time allegation, we decline to assume an equivalence to the facts of *Palm Beach Golf* when receiving a fax message is qualitatively different from receiving a text message."). The Plaintiffs have alleged *neither* wasted time nor any other intangible harm in their Complaint. The Complaint never says, for example, that reviewing the text messages took an inordinate amount of time. Nor do the Complaint's averments, taken together, suggest that each message took the Plaintiffs at least five seconds to read. *Cf. id.* at 1173 (noting that, in 47 U.S.C. § 227(d)(3)(B), the TCPA "instructs the FCC to establish telemarketing standards that include releasing the called party's line within five seconds of a hang-up"). In fact, the Complaint does not even allege that the Plaintiffs ever *read the messages at all*.

Because the Plaintiffs have alleged neither a tangible nor an intangible injury in fact—and given that the Defendants have failed to adduce a single admissible piece of evidence to substantiate their standing contentions—the Court finds that the Plaintiffs lack standing to pursue their TCPA claims in federal court.

**IV.    Remand**

This is the odd case in which the Plaintiffs insist that the Defendants' wrongful actions did *not* harm them—even as the Defendants maintain that they have. In their papers, the Defendants hone in on this peculiarity and suggest—not without cause—that the Plaintiffs are propagating a

---

argumentatively from averments in the pleadings,' but rather 'must affirmatively appear in the record.'" (citations omitted)). And the Defendants point to no evidence of battery depletion anywhere in the record. *Second*, on this record, the Court cannot say that the text messages, in fact, caused any such depletion. If, for instance, the Plaintiffs' phones were charging—or turned off—when they received the offending text messages, those messages would have caused no depletion at all. The Defendants' battery-depletion theory—though clever—is thus insufficient to establish the Plaintiffs' standing.

clever ruse in the hopes of "circumvent[ing] federal jurisdiction." Resp. at 12. As redress, the Defendants urge the Court to deny the Plaintiffs' Motion to Remand, *see id.*; to permit jurisdictional discovery, *see id.* at 12–13; and to dismiss the Complaint, *see generally* Motion to Dismiss [ECF No. 8].

But, when—as here—a plaintiff lacks standing, "a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims." *Warth*, 422 U.S. at 498; *see also Ruhrgas AG*, 526 U.S. at 583; *Steel Co.*, 523 U.S. at 94–95.[4] And, when the Court lacks jurisdiction over a removed case, the case must be remanded. *See McGee v. Solicitor Gen. of Richmond Cty., Ga.*, 727 F.3d 1322, 1326 (11th Cir. 2013) ("Typically, where standing is lacking, a court must dismiss the plaintiff's claim without prejudice. This is not so, however, in the removal context.").

The Defendants' alternative requests for discovery or dismissal are unavailing.

To begin with, jurisdictional discovery should be conducted *before* removal—not *after*. *See Torreyes v. Godiva Chocolatier, Inc.*, 424 F. Supp. 3d 1276, 1283 (S.D. Fla. 2019) (remanding case in part because "the Defendant has provided *no* evidence to substantiate its [jurisdictional] allegation," and because it had "conducted no discovery on that question"); *Gomez v. First Liberty*

---

[4] It is worth noting, too, that nothing in this Order—or in *Salcedo*—prevents the *state* court from exercising jurisdiction over this case. State legislatures, after all, are always free to adopt lower standing requirements than those imposed by Article III on *federal* courts. This "result properly follows from the allocation of authority in the federal system." *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989). As the Supreme Court has explained:

> [T]he constraints of Article III do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability even when they address issues of federal law, as when they are called upon to interpret the Constitution or, in this case, a federal statute.

*Id.* "In the scheme of the Constitution, [the states] are the primary guarantors of constitutional rights, and in many cases they may be the ultimate ones." H. Hart, *The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic*, 66 HARV. L. REV. 1362, 1401 (1953).

16

*Ins. Corp.*, 2019 WL 6123612, at *3 (S.D. Fla. Nov. 19, 2019) (same). Indeed, as the Eleventh Circuit has made plain:

> [T]he defendant, by removing the action, has represented to the court that the case belongs before it. Having made this representation, the defendant is no less subject to Rule 11 than a plaintiff who files a claim originally. Thus, a defendant that files a notice of removal prior to receiving clear evidence that the action satisfies the jurisdictional requirements, and then later faces a motion to remand, is in the same position as a plaintiff in an original action facing a motion to dismiss. The court should not reserve ruling on a motion to remand in order to allow the defendant to discover the potential factual basis of jurisdiction. Such fishing expeditions would clog the federal judicial machinery, frustrating the limited nature of federal jurisdiction by encouraging defendants to remove, at best, prematurely, and at worst, in cases in which they will never be able to establish jurisdiction.

*Lowery*, 483 F.3d at 1216–17. The Defendants' request for post-removal discovery is therefore denied. This Court will not "clog the federal judicial machinery" and "frustrate[] the limited nature of federal jurisdiction" to allow the Defendants to (attempt to) establish a standing claim which the Plaintiffs themselves have now disavowed.

Finally, the Defendants' request for dismissal is denied as moot. Even in federal-question cases, when the Court in a removed case lacks standing, it should *remand* the action—not *dismiss* it. *See, e.g.*, *Mcgee*, 727 F.3d at 1326; *St. Louis Heart Ctr., Inc. v. Nomax, Inc.*, 899 F.3d 500, 505 (8th Cir. 2018), *cert. denied*, 139 S. Ct. 1198 (2019) ("For these reasons, although we agree with the district court's conclusion that St. Louis Heart Center lacks Article III standing, we vacate the judgment dismissing the [TCPA] action with prejudice and remand with directions to return the case to state court.").

***

The Defendants removed this case to federal court under 28 U.S.C. § 1446. In doing so, they invoked this Court's federal-question jurisdiction under 28 U.S.C. § 1331. Although the Defendants did not have to plead the Plaintiffs' standing in their Notice of Removal, they must

17

establish that standing now by a preponderance of the evidence. Because they have failed to do so, "it appears that the district court lacks subject matter jurisdiction," and "the case shall be remanded." 28 U.S.C. § 1447(c).

Accordingly, the Court hereby

**ORDERS AND ADJUDGES** as follows:

1. The Plaintiffs' Motion to Remand [ECF No. 9] is **GRANTED**. This Court lacks subject-matter jurisdiction to hear this case.

2. This case is **REMANDED** to the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida.

3. The Clerk of Court is directed to **CLOSE** this case. Any pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 10th day of July 2020.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record